[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action by the Inland Wetlands Commission of the Town of Andover and its Inlands Wetlands Agent against George White in which the Town seeks a temporary injunction because White is allegedly in violation of § 6.1 of the Inland Wetlands regulations of the Town in that he built a garage within a wetlands area and watercourse without a building, zoning or wetlands permit and filled a wetlands up to the edge of the watercourses. The Plaintiffs also seek civil penalties as well as attorney's fees and costs. On June 17, 2002, the court ordered White "to have a soil scientist complete the required testing and submit a new application to the Wetlands Commission, which includes a definition of the boundaries, an opinion as to any contamination, and a proposed remedy. Testing and application is to be completed within six weeks of today." Trial on the temporary injunction was held on September 30, 2002.
Findings of Facts
On or about October 2, 2001, the Town was advised that White was constructing a two car garage without any permits on his property at 242 Gilead Road in Andover. Since the activity was within one hundred feet of wetlands, a wetlands permit was required. In response to this information, the Plaintiff Valente, Sanitarian/Wetlands agent for the town, sent White a letter, dated October 10, 2001, advising him that his activities were in violation of the Andover Inland Wetlands and Watercourse Commission regulations. White was instructed to take certain action to stabilize the site and to have an engineer present a plan to the Commission on how the site would be remediated. White did stabilize the site but failed to comply with the request to submit a remediation plan. In accordance with the enforcement provisions of Section 13 of the Commission's regulations, by letter. dated November 5, 2001, Valente ordered White to have his engineer prepare plans and make an application CT Page 1425 for the removal of all material within one hundred feet of wetlands and to prepare an application for the regulated activity. Valente also requested that White appear at a special meeting of the Andover Inland Wetland Watercourse Commission on November 15, 2001. On November 8, 2001, White did submit an application for an Inland Wetlands and Watercourses permit but no plans showing what activity he proposed to conduct were included with the application. The activity was simply described as "storage." Usually such an application includes a plan by an engineer providing justification for the filling of the wetlands. On November 15th White appeared at the Commission meeting and Valente reported that White had installed a silt fence to stabilize the site and had submitted an application. It was also noted that the activity on the site had ceased after the garage area was made structurally sound and protected from weather damage. A site walk by the members of the Commission was determined to be necessary and was scheduled for December 1st. A site walk by several members of the Commission did occur on that date. As a result, White was advised by Valente, in a letter dated December 11th, that it was apparent that some filling and grading had occurred up to and in wetlands and that this was a violation of the Commission regulations. White was advised that he must provide a plan showing wetlands delineation by a soil scientist and that his engineer should provide a plan and narrative on the removal of material from the edge of the stream and wetlands. Valente received no response from White so he wrote to him again on January 23rd and advised him that he should attend the next Commission meeting on February 11th" with his plan for removal of material from the wetlands and an erosion and sediment control narrative. White did not appear at the February 11th meeting and the Commission denied his application for construction of a garage in a regulated area without prejudice. White was advised of this action by letter dated February 14th in which Valente also stated that if he did not provide the requested information the matter would be handed over to the town attorney. White did not comply with this request. This action followed.
Pursuant to the court's order of June 17, 2002, White submitted a letter from a soil scientist, dated July 29, 2002, to Valente in which the soil scientist stated that "Examination of soil profiles in backhoe pits revealed that virtually all of the soils lying between the shed and the brook is fill over wetland soils. It is probable that a portion of the shed is constructed over a filled wetland. The depth of the fill over the wetland is sufficiently thick that the area is no longer a wetland. I was informed by you (Edward Pelletier) and Mr. White that a portion of this area was filled in conjunction with the constructed (sic) of the driveway in accordance with the approved plan dated 8/11/86 and a pond which was permitted at a later date. The remaining areas were filled in CT Page 1426 2002 in conjunction with the Construction of the garage." However White did not submit a new application to the Wetlands Commission as ordered by the court.
There is no dispute that White has filled wetlands on his property without a permit. White agreed at the hearing on the temporary injunction that there has been a filling of wetlands on his property which was done when he built the garage. A large area from the garage to the bank of the stream has been filled. An area of about eighty to ninety feet wide from the stream to the garage which was wetlands has been filled and is no longer wetlands. The garage itself was built in an area that may have been wetlands.
Discussion
Pursuant to the authority of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 to 22a-45, the Town of Andover adopted Inland Wetlands and Watercourses Regulations. Section 6.1 of those regulations provides that: "No person shall conduct or maintain a regulated activity without first obtaining a permit for such activity from the Inland Wetlands Agency of the Town of Andover." The regulations define a "regulated activity" as "any operation within, or use of, a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, and earth moving, filling, construction, logging or clear cutting of trees within one hundred (100) feet of wetlands or watercourses . . ." It is clear that White's filling of wetlands on his property is a regulated activity within the meaning of the regulations which requires a permit. Accordingly the court finds that White violated the regulations by conducting a regulated activity without first obtaining a permit.
General Statutes § 22a-44 (b) provides that: "Any person who commits, takes part in, or assists in any violation of any provision of sections 22a-36 to 22a-45, inclusive, including regulations adopted by the commissioner and ordinances and regulations promulgated by municipalities or districts pursuant to the grant of authority herein contained, shall be assessed a civil penalty of not more than one thousand dollars for each offense. Each violation of said sections shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. The Superior Court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to CT Page 1427 assess civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action. All penalties collected pursuant to this section shall be used solely by the Commissioner of Environmental Protection (1) to restore the affected wetlands or watercourses to their condition prior to the violation, wherever possible, (2) to restore other degraded wetlands or watercourses, (3) to inventory or index wetlands and watercourses of the state, or (4) to implement a comprehensive training program for inland wetlands agency members." The court may properly issue injunctive relief pursuant to the authority of this statute, Conservation Commission of theTown of Simsbury v. Price, 193 Conn. 414, 429-430 (1984), as well as attorneys fees and costs, Stamford v. Kovac, 36 Conn. App. 270, 278-282
(1994).
Here it is clear that White has filled in wetlands on his property without a permit and he is in violation of Andover's Inland Wetlands and Watercourses Regulations. Therefore the court may issue orders restraining his continuing violation of the regulations and issue orders directing that the violation be corrected as well as that he pay the attorney's fees incurred by the town in connection with this enforcement action.
Order
1. A temporary injunction is issued restraining the Defendant from making any further changes to the inland wetlands area located at 242 Gilead Road, Andover, Connecticut or contaminating the site.
2. On or before March 28, 2003, the Defendant shall submit to the Andover Inland Wetland Watercourse Commission a plan to correct the violation and restore the site, prepared and approved by an engineer and soil scientist. The cost of such plan shall be the responsibility of the Defendant.
3. A mandatory injunction is issued requiring that the Defendant correct the violation and restore the site pursuant to a plan approved by the Andover Inland Wetland Watercourse Commission. The cost of such remediation shall be the responsibility of the Defendant.
4. The Defendant shall pay the Plaintiff $2,819.25 in attorneys fees by June 6, 2003. ___________________, J. Jane S. Scholl CT Page 1428
[EDITORS' NOTE: This page is blank.] CT Page 1429